UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY MORRIS,

     Plaintiff,

v.                                      Case No. 22-10754

PLYMOUTH COURT SNF, LLC,            Sean F. Cox
d/b/a SKLD Plymouth                United States District Court Judge

     Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case. Plaintiff Tiffany Morris, filed this action against her former employer, Defendant Plymouth Court SNF, LLC, d/b/a SKLD Plymouth, alleging that she was discriminatorily terminated from her position due to her sex/pregnancy and disability in violation of Federal Title VII, the Americans with Disabilities Act, the Family Medical Leave Act, the Emergency Paid Sick Leave Act, the COVID-19 Employment Rights Act, Michigan's Elliott-Larsen Civil Rights Act, and the Persons with Disabilities Civil Rights Act.

The matter currently before the Court is Defendant's Motion for Summary Judgment. The motion has been fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court finds this Motion has been adequately briefed and will rule without a hearing.

For the reasons explained below, the Court will **GRANT** Defendant's Motion for Summary Judgment.

# BACKGROUND

Plaintiff Tiffany Morris ("Plaintiff") filed this action against her former employer, Plymouth Court SNF, LLC, d/b/a SKLD Plymouth ("Defendant") on April 7, 2022. (ECF No. 1). Plaintiff's Complaint contains eleven state and federal claims against Defendant:

1. Title VII[1] Sex/Pregnancy Discrimination, 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-2(m) (Count I);

2. Elliott-Larsen Civil Rights Act Sex—Discrimination, Mich. Comp. Laws § 37.2202(1)(a) and Mich. Comp. Laws § 37.2202(1)(d) (Count II);

3. Americans with Disabilities Act—Discrimination 42 U.S.C. § 12112(a) (Count III);

4. Americans with Disabilities Act—Retaliation 42 U.S.C. § 12203 (Count IV);

5. Persons with Disabilities Civil Rights Act ("PWDCRA")—Discrimination, Mich. Comp. Laws § 37.1202(1) (Count V);

6. PWDCRA—Retaliation, Mich. Comp. Laws § 37.1602(a) (Count VI);

7. Family and Medical Leave Act ("FMLA")—Interference, 29 U.S.C. § 2615(a)(1) (Count VII);

8. Family and Medical Leave Act ("FMLA")—Retaliation, 29 U.S.C. § 2615(a)(2) (Count VIII);

9. Michigan's COVID-19 Employment Rights Act, Mich. Comp. Laws 419.401 (Count IX);

10. Emergency Paid Sick Leave Act—Interference, 29 U.S.C. § 2620 (Count X); and

11. Emergency Paid Sick Leave Act—Retaliation, 29 U.S.C. § 2620 (Count XI).

(*Id.*)

Discovery has closed and Defendant has filed a motion for summary judgment. This Court's practice guidelines provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

a. The moving party's papers shall include a separate document entitled **Statement of Material Facts Not in Dispute**. The statement shall list in separately numbered

---

[1] While the title of Plaintiff's claim for Count I says "Title VIII," the remainder of the description cites "Title VII". The Court thus treats this as a typo and conducts its analysis under Title VII.

2

paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . . .

b. In response, the opposing party shall file a separate document entitled **Counter-Statement of Disputed Facts**. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(ECF No. 29).

Defendant complied with the Court's practice guidelines for summary judgment motions such that its motion includes a "Statement of Material Facts Not in Dispute" (ECF No. 33-1) and Plaintiff included a "Counter-Statement of Disputed Facts" (ECF No. 37).

The relevant evidence submitted by the parties—*construed in the light most favorable to Plaintiff*—is as follows.

Defendant is a skilled nursing home facility in Plymouth, Michigan. (ECF No. 34, PageID.599; ECF No. 37, PageID.807). Plaintiff, a licensed practical nurse, first worked at the facility through a predecessor company (Heartland Health Care), which Defendant acquired in or around 2018. (ECF No. 34, PageID.599; ECF No. 37, PageID.808). Plaintiff left employment with Defendant for another position in 2019. (ECF No. 34, PageID.599; ECF No. 37, PageID.808).

On October 7, 2019, Plaintiff returned to work for Defendant. (ECF No. 34, PageID.599; ECF No. 37, PageID.807). Upon her return, Plaintiff was hired as a Unit Supervisor. (ECF No. 34, PageID.599; ECF No. 37, PageID.807). The position reported to the Facility's Director of Nursing. (ECF No. 34, PageID.599; ECF No. 37, PageID.807). Upon her return to work for Defendant in October 2019, Plaintiff received a copy of Defendant's Employee Handbook. (ECF No. 34,

PageID.599; ECF No. 37, PageID.807). The Employee Handbook included a list of "offenses [that] are considered severe and will result in termination." (ECF No. 36-13, PageID.786). One such offense listed is "[e]ngaging in conduct that is improper or inappropriate that may put the Company at risk." (*Id.*)

On February 28, 2020, Tina Long (aka Tina Elstone) ("Long"), a registered nurse was hired as the Facility's Director of Nursing ("DON") and served as Plaintiff's supervisor. (ECF No. 34, PageID.599; ECF No. 37, PageID.808).

On May 4, 2020, Plaintiff's employment with Defendant was terminated at Long's recommendation. (ECF No. 34, PageID.602; ECF No. 37, PageID.813). Following her termination, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission and the Michigan Department of Civil Rights, alleging that she was discriminated against because of her gender (based on her pregnancy) and because of a disability. (ECF No. 34, PageID.602; ECF No. 37, PageID.814). Plaintiff also filed this case in federal court on April 7, 2022. (ECF No. 1). In support of her pregnancy discrimination claim, Plaintiff relies on the following statements she attributes to Long. (ECF No. 34, PageID.602; ECF No. 37, PageID.815).

First, when referencing another pregnant employee, Long stated, "who would want to work when they are pregnant during COVID" and that that employee's leave was getting ridiculous. (ECF No. 34, PageID.602; ECF No. 37, PageID.815). Long served as that employee's supervisor. (ECF No. 34, PageID.603; ECF No. 37, PageID.815).

Second, on or around April 16, 2020, Plaintiff advised Long she was not feeling well and was going to take a pregnancy test and a COVID test. (ECF No. 34, PageID.603; ECF No. 37, PageID.815). "Long responded with a 'shocked face' emoji, followed by [the word] 'pregnant'

and an image of [Long's] 'bitmoji' slapping her own forehead" and then said, "better you than me." (ECF No. 36-7, PageID.753). Plaintiff responded by saying, "better not me either" to which Long replied, "[w]hy you cheated[?]" (ECF No. 34, PageID.603; ECF No. 37, PageID.815; ECF No. 36-7, PageID.754). Plaintiff conceded that she and Long had had "personal conversations" about their families but did not know why Long made those comments. (ECF No. 34, PageID.603; ECF No. 37, PageID.815). Plaintiff also conceded that she had previously told Long she did *not* intend to have any more children and that she had disclosed to Long that she had a difficult prior pregnancy. (ECF No. 36, PageID.625; (ECF No. 34, PageID.603; ECF No. 37, PageID.815).

Third, on April 17, 2020, Plaintiff confirmed she had been tested for COVID and would know the results within three (3) days. (ECF No. 34, PageID.603; ECF No. 37, PageID.815). On April 20, Plaintiff advised Long that her COVID test was negative but that her pregnancy test was positive. (ECF No. 34, PageID.603). Plaintiff called off for her shift that day, purportedly because she was still suffering from COVID symptoms. (ECF No. 34, PageID.603; ECF No. 37, PageID.815).

Then, when Plaintiff said she was trying to get a doctor's appointment to see why she was feeling sick, Long speculated that it was just "because your hormones are off [s]illy." (ECF No. 34, PageID.603; ECF No. 37, PageID.815). Plaintiff found this comment to invalidate how she felt and what she was physically experiencing. (ECF No. 37, PageID.815).

On or around April 22, 2020, Plaintiff tested positive for COVID. (ECF No. 34, PageID.604; ECF No. 37, PageID.816). At that time, CDC guidelines required a 14-day quarantine, thus, Plaintiff's return to work date was set for May 4, 2020. (ECF No. 34, PageID.604; ECF No. 37, PageID.816). Plaintiff was subsequently placed on an automatic two-week leave.

(ECF No. 34, PageID.604; ECF No. 37, PageID.816).[2] Plaintiff did not ask for an extension of the 14-day COVID leave. (ECF No. 34, PageID.604; ECF No. 37, PageID.816). The day Plaintiff was scheduled to return to work, May 4, 2020, Defendant terminated Plaintiff's employment. (ECF No. 34, PageID.605; ECF No. 37, PageID.816).

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing Defendant's summary judgment motion, this Court must view all facts and inferences in the light most favorable to Plaintiff, the nonmoving party. *Lenning v. Com. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

## ANALYSIS

### I.    Sex and Pregnancy Discrimination (Counts I and II)

Plaintiff's first claims are for sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I) and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") (Count II). Under Title VII, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Discrimination "on the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k).

---

[2] The parties disagree as to whether Plaintiff informing Defendant of her COVID diagnosis, knowing it would result in an automatic two-week paid leave, constituted a "request" for leave. (ECF No. 34, PageID.604; ECF No. 37, PageID.816).

Michigan's ELCRA forbids like conduct and claims of discrimination under Title VII. *Radtke v. Everett*, 442 Mich. 368, 382 (1993) (internal quotations omitted); *see also In re Rodriguez*, 487 F.3d 1001, 1008 n.2 (6th Cir. 2007). Title VII and ELCRA can thus be analyzed together. *Id.*

To make a *prima facie* case of pregnancy and sex discrimination, Plaintiff must show that: "(1) she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision." *Asmo v. Keane, Inc.*, 471 F.3d 558, 592 (6th Cir. 2006); *see also Johnson v. Evolent Health, LLC,* No. 22-5574, 2023 WL 2326676, at *4 (6th Cir. Mar. 2, 2023).

If Plaintiff has established a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). If Defendant carries its burden, Plaintiff has the opportunity to prove that the proffered reason is pretextual. *Id.*

Here, Defendant only contests the fourth element that "there is no 'causal nexus' between [Plaintiff's] gender and/or disclosure of her pregnancy and her termination." (ECF No. 33, PageID.441).

Plaintiff disagrees. She argues that several disparaging comments by her supervisor as well as the temporal proximity between her pregnancy announcement and her termination sufficiently establish a nexus between her pregnancy and the adverse employment decision. (ECF No. 36, PageID.623–24).

First, Plaintiff argues that her supervisor, Long, made several disparaging comments regarding both another employee's pregnancy and Plaintiff's pregnancy. Specifically, Plaintiff claims Long questioned why an employee would want to work while pregnant and complained

about the amount of leave the employee was taking. (ECF No. 36, PageID.623). Later, Plaintiff claims that when she told Long via text message that she planned to take a pregnancy test, "Long responded with a 'shocked face' emoji, followed by [the word] 'pregnant' and an image of [Long's] 'bitmoji' slapping her own forehead. She then said, 'Girl Lol better you than me.'" Plaintiff responded, "[b]etter not me either," to which Long replied, "[w]hy you cheated"? (ECF No. 34, PageID.603; ECF No. 37, PageID.815; ECF No. 36-7, PageID.754). (internal citations omitted).

Further, when Plaintiff told Long of her positive pregnancy test and her symptoms, Long's only response was to ask how long she would be out of work and to say she was glad Plaintiff's COVID test was negative. (ECF No. 36, PageID.625). Then, when Plaintiff said she was trying to get a doctor's appointment to see why she was feeling sick, Long speculated that it was just that Plaintiff's "hormones were off." (*Id.*)

Plaintiff also claims she had disclosed to Long that she had a difficult prior pregnancy, "raising the inference that [Long] terminated [Plaintiff] to avoid her likely further use of leave." (ECF No. 36, PageID.625).

Second, Plaintiff argues that the temporal proximity between her notifying her employer of her pregnancy and her termination can sufficiently establish the required nexus. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006). Plaintiff disclosed her pregnancy to Long on April 20, 2020. (ECF No. 36-7, PageID.755). Long called Plaintiff and terminated her on May 4, 2020. (ECF No. 34, PageID.605; ECF No. 37, PageID.816; ECF No. 33-5, PageID.488–89). In other words, Plaintiff's termination occurred only two weeks after the disclosure of her pregnancy, which Plaintiff argues is sufficient to satisfy the nexus requirement.

Here, the Court begins with whether Plaintiff has established a *prima facie* case. The parties only contest the fourth element, whether there is a nexus between Plaintiff's pregnancy and Defendant's decision to terminate her.

In *Asmo v. Keane, Inc.*, the court held that temporal proximity alone could satisfy the nexus requirement in the pregnancy discrimination context. 471 F.3d at 593. There, the employer-defendant terminated the plaintiff from her employment within two months of her informing the defendant of her pregnancy. *Id.* at 594. The court found that two-month temporal proximity sufficient to establish a link between the plaintiff's pregnancy and her termination. *Id.*

Here, the temporal proximity is far shorter than in *Asmo*. Plaintiff disclosed her pregnancy to Long on April 20, 2020. (ECF No. 36, PageID.624; ECF No. 36-7, PageID.755). Long then terminated Plaintiff on May 4, 2020. (ECF No. 1, PageID.5). At only two weeks, the temporal proximity is far shorter than the two months the court found sufficient in *Asmo*. The Court finds Plaintiff meets the fourth element and has successfully established a *prima facie* case.

Once Plaintiff has established a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–05. Defendant states that Long based her recommendation to terminate Plaintiff on the "consistent *pattern* of Plaintiff representing herself to hold authority that she simply did not." (ECF No. 33, PageID.440). This pattern included three specific reported incidents.

First, when Long first started working for Defendant, she claims Plaintiff introduced herself as "the one who does the 'hiring and firing.'" (ECF No. 33, PageID.440; ECF No. 34, PageID.600). Long claims she informed Plaintiff that she was incorrect. (ECF No. 33, PageID.440; ECF No. 34, PageID.600). Plaintiff argues no such incident occurred but provides no evidence beyond her own testimony to support her claim. (ECF No. 37, PageID.808–09).

Second, Long stated that Plaintiff had offered a job that was not available and that she had no authority to offer it to another employee. (ECF No. 33, PageID.440; ECF No. 33-10, PageID.524; ECF No. 34, PageID.600). Plaintiff again argues no such incident occurred. (ECF No. 37, PageID.809).

Both of the above incidents occurred *before* Plaintiff's pregnancy disclosure.

Third, on April 20, 2020, Defendant's Human Resources Representative notified Long that Defendant's internal compliance hotline received a complaint from a former employee, Quiema Bradley, that included a report that Plaintiff had represented herself to Bradley as the "Director of Nursing." (ECF No. 33, PageID.441, ECF No. 34, PageID.601).

Defendant claims these incidents constitute a legitimate rationale for its decision to terminate Plaintiff.

Here, the Court finds the above incidents articulate legitimate, nondiscriminatory reasons for Plaintiff's termination. Two of the incidents occurred *before* Plaintiff notified Defendant of her pregnancy. Further, Long was *informed* of the third incident the same day as Plaintiff's disclosure. Even if the Court did not consider this third incident, the first two incidents of alleged misrepresentation provide a legitimate, nondiscriminatory rationale for Plaintiff's termination. Defendant has therefore successfully carried its burden.

Finally, the burden shifts back to give Plaintiff the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons but rather were a pretext for discrimination. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (*citing McDonnell Douglas*, 411 U.S. at 804). Plaintiff can show pretext by showing the proffered reason: (1) had no basis in fact; (2) did not actually motivate Defendant's termination; or (3) was insufficient to motivate her termination. *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL

3886405, at *5 (6th Cir. June 8, 2023) (*citing Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012)). At the summary judgment phase, Plaintiff's burden is to produce "sufficient evidence from which a jury could reasonably reject [Defendant's] explanation of why it fired her." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Plaintiff argues she can establish Defendant's proffered reasons were pretextual under all three methods. (ECF No. 36, PageID.633). The Court addresses each in turn.

### a. Proffered Reasons Did Not Actually Motivate Defendant's Actions

Under the first approach, Plaintiff can "attempt[] to indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more likely than that offered by the defendant*." *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *6 (6th Cir. June 8, 2023) (emphasis added) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). In other words, Plaintiff must show "that the sheer weight of circumstantial evidence of discrimination makes it 'more likely than not that the employer's explanation is a pretext, or coverup." *Id.*

Here, Plaintiff argues that Defendant's stated reasons for terminating Plaintiff have changed over time. (ECF No. 36, PageID.634). Such shifting justifications over time can call "the credibility of those justifications into question . . . [and] shows a genuine issue of fact that [Defendant's] proffered reason was not only false, but that the falsity was a pretext for discrimination." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002).

When Defendant first terminated Plaintiff, she claimed Plaintiff was being terminated because she "misrepresented herself as the [Director of Nursing] and that she offered another staff

member a position that she was not entitled to offer." (ECF No. 36, PageID.634; ECF No. 36-2, PageID.665).

On the termination paperwork, Long selected "[e]ngaging in conduct that is improper or inappropriate that may put the Company at risk" as the reason for Plaintiff's termination. (ECF No. 36-10).

In her affidavit, Long stated that "she terminated Plaintiff because of improper conduct relating to her overstepping the bounds of her employment on multiple occasions and her dereliction of duty by not showing up or calling off on multiple occasions without notifying her superiors." (ECF No. 36, PageID.635; ECF No. 36-11, PageID.776).

In its interrogatory responses, Defendant stated that "Plaintiff's termination was based on her insubordination, her misrepresentation of her position, and dereliction of duty." (ECF No. 36, PageID.635; ECF No. 36-14, PageID.790). There, Defendant also stated that "Plaintiff was terminated based not just on a single act of insubordination or misrepresentation or dereliction of duty, but the totality of the circumstances involved." (ECF No. 36, PageID.635; ECF No. 36-14, PageID.791).

At her deposition, Long could not initially remember if she would have terminated Plaintiff without Bradley's complaint or when she decided to fire Plaintiff. (ECF No. 36, PageID.635; ECF No. 36-3, PageID.707–08). Long also stated that her decision to terminate Plaintiff "was based on the totality of the circumstances and that she would not have made her decision prior to every stated reason for termination occurring, including insubordination and dereliction of duty." (ECF No. 36, PageID.635; ECF No. 36-3, PageID.710–11). Long also stated that there were no reasons for termination that were not listed on the termination form. (ECF No. 36, PageID.635; ECF No. 36-3, PageID.714). However, Long did not mention "dereliction of duty" or "insubordination" on

the termination form but did mention these reasons in her affidavit and interrogatory. (ECF No. 36, PageID.635; ECF No. 36-10).

However, the question here is whether Defendant showed that its *proffered reason* for terminating Plaintiff did not *actually* motivate Defendant's conduct. Here, there is no question that Defendant terminated Plaintiff for reports that she misrepresented herself on several occasions. Nor has that rationale changed over time. Rather, in each setting, Long gave more detailed explanations of her decision to terminate Plaintiff. The core rationale for terminating Plaintiff has remained the same—her alleged repeated misrepresentations.

The Court therefore finds that Plaintiff has failed to show that the Defendant's proffered reason for terminating Plaintiff did not actually motivate Defendant's actions.

### b. No Basis in Fact

Next, Plaintiff makes four arguments for why Defendant's proffered reason for Plaintiff's termination has no basis in fact. Specifically, Plaintiff argues (1) that she was not derelict in her duties; (2) she never overstepped the bounds of her employment; (3) there is no evidence she was ever "insubordinate"; and (4) Long could not identify how long Plaintiff had "put the company at risk," even though that was the alleged reason for her termination. (ECF No. 36, PageID.633–41).

However, throughout all these arguments, Plaintiff fails to cite any *evidence* from which a jury could reasonably reject Defendant's explanation of why it fired her. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). As stated above, at the summary judgment phase, it is *Plaintiff's* burden to produce such evidence. *Id.* Rather than providing any evidence to counter Defendant's claims, Plaintiff repeatedly cites to her own testimony. This is not sufficient evidence to create a triable

issue of fact as to whether there is a factual basis for Plaintiff's claims. *See Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *5 (6th Cir. June 8, 2023).

Absent any such evidence, the Court finds that Plaintiff has failed to show that the Defendant's proffered reason for terminating Plaintiff had no basis in fact.

### c. Proffered Reasons Were Insufficient to Motivate Plaintiff's Termination

Finally, Plaintiff argues these proffered reasons for termination were insufficient to motivate Defendant's actions because Plaintiff was never disciplined for any of these alleged incidents prior to her termination. (ECF No. 36, PageID.638–39).  In other words, Plaintiff argues Defendant claims to have terminated her for offenses that did not even warrant prior discipline. (*Id.*) Rather, Plaintiff argues Defendant only terminated Plaintiff once it learned of her pregnancy. (*Id.*)

However, Defendant's rationale for terminating Plaintiff is listed in the Employee Handbook as one of several "offenses [that] are considered severe and will result in termination." (ECF No. 36-13, PageID.785). Plaintiff provides no evidence that any prior discipline is required before termination on such grounds. Defendant found the several reported incidents of Plaintiff "misrepresenting herself" to be "conduct that is improper or inappropriate that may put the Company at risk" and terminated her as a result.

Absent any evidence to the contrary, the Court finds Plaintiff failed to show Defendant's proffered reasons were insufficient to motivate Plaintiff's termination.

The Court also therefore finds Plaintiff has failed to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were a pretext for discrimination.

As such, the Court **GRANTS** Defendant's Motion for Summary Judgment as to as to Counts I and II.

**II.      Disability Discrimination (Counts III and V) and Retaliation (Counts IV and VI)**

The Sixth Circuit typically analyzes ADA and PWDCRA discrimination under the same framework, particularly where Plaintiff "provides no argument as to why [the Court] should treat the claims separately." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 n.4 (6th Cir. 2020). Here, Plaintiff makes no such claim. The Court will thus analyze the claims together.

**a.   Disability Discrimination (Counts III and V)**

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) she is disabled, (2) she is otherwise qualified for the position, with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 321 (6th Cir. 2019) (citing *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92, 894 (6th Cir. 2016)). Here, the parties only contest the first element.

Once the plaintiff has established a *prima facie* case of disability discrimination, "the burden shifts to [the defendant] to articulate some legitimate, nondiscriminatory reason for its actions." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008).

If the defendant articulates such a reason, the plaintiff "must show by a preponderance of the evidence that the proffered explanation is pretext for discrimination." *Id.*

First, to establish a *prima facie* case of disability discrimination, Plaintiff must show that she is "disabled." The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "An individual meets the requirements of having such an impairment if the individual establishes that

he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, under § 12102(1)(C), an individual who is "regarded as having such an impairment" does not "apply to impairments that are transitory or minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Here, Plaintiff argues that she had had an "actual disability" (§ 12102(A)) based on her COVID diagnosis or "was regarded as having such a disability" (§ 12102(C)) based on her pregnancy.

Regarding her COVID diagnosis, Plaintiff states she suffers from the effects of long-COVID, including loss of taste and high blood pressure. (ECF No. 36-2, PageID.664). Plaintiff argues this constitutes a long-term, substantial limitation to a major life activity. *See Southall v. Ford Motor Co.*, 645 F. Supp. 3d. 826, 835 n.3 (S.D. Ohio 2022).

Defendant disagrees. It argues Plaintiff was not disabled based on her COVID diagnosis because Plaintiff testified that she intended to return to work on May 4, 2020, after two weeks of leave. (ECF No. 33, PageID.446; ECF No. 36-2, PageID.664). A two-week illness would be considered "transitory and minor" under the ADA. 42 U.S.C. § 12102(3)(B). Further, Plaintiff made no request for further accommodation for any COVID symptoms. (ECF No. 33, PageID.446–48).

Regarding Plaintiff's pregnancy, though pregnancy itself is not considered a disability, pregnancy-related complications can qualify. *Spees v. James Marine, Inc.*, 617 F.3d 380, 396 (6th Cir. 2010). In other words, a pregnancy complication can count as a disability if it causes "a physical or mental impairment that substantially limits one or more major life activities" or causes

16

the plaintiff to be "regarded as having such an impairment" 42 U.S.C. § 12102(1). (ECF No. 36, PageID.631).

Plaintiff claims she "had disclosed a past difficult pregnancy to [Long] (ECF No. 36-2, PageID.657) which raises the inference that [Plaintiff] would have needed more medical leave, perhaps more than other pregnant employees." (ECF No. 36, PageID.632). In other words, Plaintiff argues Defendant may have regarded Plaintiff's pregnancy as a disability based on this information. Plaintiff also cites Long's "derogatory comments" about pregnancy and leave in the context of the pandemic as evidence of Defendant regarding pregnancy as a disability.

These statements include: (1) that Long asked "who would want to work when they are pregnant during COVID" when referencing another pregnant employee who she supervised and said that the employee's leave was "getting ridiculous." (ECF No. 33-1, PageID.462–63). Defendant admits Long made these statements. (*Id.*) (2) When Plaintiff told Long she was not feeling well and was going to take a COVID test as well as a pregnancy test, Long responded with a "'shocked face' emoji" followed by the word "pregnant," an image of Long's "bitmoji" slapping her own forehead, and another text saying "LOL girl better you than me." Plaintiff responded by saying, "better not me either" to which Long responded "[w]hy you cheated[?]" (ECF No. 34, PageID.603; ECF No. 37, PageID.815; ECF No. 36-7, PageID.754). Defendant admits Long made these statements. (ECF No. 37, PageID.815). Plaintiff admits, however, that she had previously told Long she did *not* intend to have any more children. (ECF No. 33-1, PageID.463).

However, Plaintiff cites no binding caselaw or analogous cases to support her claims that such statements paired with a pregnancy diagnosis would constitute evidence that Defendant regarded her pregnancy as a disability under the ADA.

When evaluating a "regarded as" claim, district courts look to the state of mind of the entity against whom Plaintiff makes her claim, not to the individual making the claim. *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 340 (6th Cir. 2002) (citing *Ross v. Campbell Soup Co.*, 237 F.2d 701, 706 (6th Cir. 2001)). Absent any caselaw to support the assertion that such comments constitute Defendant regarding Plaintiff's pregnancy as a disability, this Court finds Plaintiff has failed to show that she had a disability or that Defendant regarded her COVID diagnosis or her pregnancy as a disability.

Further, even if Plaintiff was "regarded as" or was actually disabled under the ADA, there is no evidence of the disability being a "but for" cause of her termination. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012)).

Plaintiff thus fails to meet the first element to make a *prima facie* case of disability discrimination under the ADA or PWDCRA. The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to Counts III and V.

### b.  Disability Retaliation (Counts IV and VI)

Next, to establish a prima facie case of retaliation under the ADA and PWDCRA, Plaintiff must show that (1) she engaged in activity protected by the ADA or PWDCRA; (2) Defendant knew of this exercise of her protected rights; (3) Defendant subsequently took an employment action adverse to Plaintiff or subjected Plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) (citing *Steward v. New Chrysler*, 415 F. App'x 632, 643–44 (6th Cir.2011)); *Parker v. Daimlerchrysler Corp.*, No.

245066, 2004 WL 1103968, at *3 (Mich. Ct. App. May 18, 2004). (ECF No. 33, PageID.445; ECF No. 36, PageID.632).

The burden-shifting framework also applies here. (ECF No. 33, PageID.446). "If the Plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Hurtt*, 627 F. App'x at 422 (quoting *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997)). If the defendant meets its burden, the plaintiff bears the final burden of proving that the defendant's "proffered reason for the action was merely a pretext for discrimination." *Id.*

Here, Defendant only contests the first element. First, Defendant argues Plaintiff cannot meet the first element that she engaged in a protected activity because she was not considered disabled under the ADA. (ECF No. 33, PageID.445). Nor can she demonstrate that she engaged in any protected activity under the ADA. (*Id.*) As stated above, this Court agrees that neither Plaintiff's pregnancy nor her COVID diagnosis constitutes a "disability" under the ADA. Further, even if Plaintiff *was* considered disabled under the ADA, she was not engaged in any protected activity because she did not request any accommodation.

In response, Plaintiff makes only a bare assertion that informing her employer of her COVID diagnosis, knowing it would result in two weeks of leave, constitutes a request for leave. (ECF No. 36, PageID.633). Plaintiff cites no case law to support her assertion. This is insufficient.

Absent any caselaw to support the assertion that informing constitutes a request for leave, this Court finds Plaintiff has failed to show that she engaged in an activity protected by the ADA. As such, Plaintiff has failed to meet the first element to make a *prima facie* case of disability retaliation under the ADA or PWDCRA.

The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to Counts IV and VI.

**III.     FMLA Claims (Counts VII and VIII)**

      **a.   FMLA Interference (Count VII)**

To make a *prima facie* claim of interference under the FMLA, Plaintiff must establish: (1) that she is an eligible employee; (2) Defendant is an employer as defined by the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave Defendant notice of her intention to take leave; and (5) that Defendant denied her FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir.2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005)). (ECF No. 33, PageID.449; ECF No. 36, PageID.625–26).

First, Defendant claims Plaintiff is not entitled to an interference claim under the FMLA because Plaintiff was not an "eligible employee" prior to her May 4, 2020, termination. (ECF No. 33, PageID.450). To be considered an "eligible employee" under the FMLA, the employee must have been employed by the employer for at least 12 months and for at least 1,250 hours of service. 29 U.S.C.A. § 2611(2)(A). Defendant argues Plaintiff has not established that she completed the 1,250 hours of service with Defendant in the 12-month period which would entitle her to leave under the FMLA, meaning she is not an "eligible employee". (ECF No. 33).

Plaintiff argues that the exhibit Defendant uses to show Plaintiff did not meet the requisite hours was not submitted in discovery, are out of order, undated, and appear to be missing pay periods. (ECF No. 36, PageID.626). Plaintiff also questions the accuracy of these records, claiming that as a salaried employee, she did not punch in and out of work or otherwise track her hours.

(ECF No. 36, PageID.627). She therefore argues Plaintiff's eligibility is a genuine issue of material fact. (ECF No. 36, PageID.628).

Finally, Plaintiff argues the Court cannot consider this evidence under FRCP 37(c), which states, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). (ECF No. 36 PageID.626–27).

Here, the Court finds Plaintiff has failed to carry her burden to show that she was an eligible employee under the FMLA.

Plaintiff is correct that the Court cannot consider evidence not provided during discovery in such a motion. *See* Fed. R. Civ. P. 37(c). However, that does not change that it is *Plaintiff's* burden to make a *prima facie* claim of interference under the FMLA, not Defendant's. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). Plaintiff provides no evidence to show she met the requisite hours to be considered an "eligible employee" under the FMLA. Plaintiff therefore fails to meet the first element that she was an "eligible employee" under the FMLA. As such, Plaintiff cannot establish a *prima facie* case of interference under the FMLA.

The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to Count VII.

### b.  FMLA Retaliation (Count VIII)

To make a *prima facie* claim of retaliation under the FMLA, Plaintiff must establish: (1) that she availed herself of a protected right under the FMLA by notifying Defendant of her intent to take leave; (2) Defendant had knowledge of her intent to take leave; (3) Plaintiff suffered an adverse employment action; and (4) there was a causal connection between the exercise of her

rights under the FMLA and the adverse employment action. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Defendant argues that Plaintiff's FMLA retaliation claim fails for the same reason as her FMLA interference claim—an employee who is not eligible under the FMLA cannot bring an FMLA retaliation claim. *See Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 354 (citing *Humenny v. Genex Corp., Inc.*, 390 F.3d 901, 905–06 (6th Cir. 2004)).

Further, even if Plaintiff were an eligible employee under the FMLA, her retaliation claim would still fail because there is no evidence that Plaintiff "affirmatively requested FMLA leave or gave [Defendant] any notice that [s]he intended to do so." (ECF No. 33, PageID.452).

Plaintiff responds by only addressing the fourth element—that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. (ECF No. 36, PageID.629). Plaintiff does not address Defendant's claim that she is not an "eligible employee" under the FMLA in regards to her retaliation claim.

Here, the Court finds Plaintiff has failed to meet her burden. As the Court found above, Plaintiff is not an "eligible employee" under the FMLA. The Sixth Circuit has previously held that if an employee is not eligible for FMLA benefits, she cannot maintain a claim for retaliation under the FMLA. *See Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 354 (6th Cir. 2008); *see also Humenny v. Genex Corp.*, 390 F.3d 901, 905–06 (6th Cir.2004) (holding that an FMLA retaliation claim cannot be maintained by one who was not an "eligible employee"). As such, Plaintiff's retaliation claim must fail as a matter of law.

The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to Count VIII.

**IV.**   **Wrongful Termination under Michigan's COVID-19 Employment Rights Act (CERA) (Count IX)**

Michigan's COVID-19 Employment Rights Act ("CERA") prohibits an employer from "discharg[ing] disciplin[ing], or otherwise retaliating against an employee who . . . tests positive for COVID-19 or displays the principal symptoms of COVID-19" and does not report to work after displaying these symptoms. Mich. Comp. Laws §§ 419.403, 419.405.[3]  However, the CERA imposes less restrictive requirements on healthcare professionals. Mich. Comp. Laws § 419.405(4). Even if they would otherwise be allowed to quarantine, the CERA allows healthcare professionals to "participate in onsite operations when strictly necessary to preserve the function of a facility where cessation of operation of the facility would cause serious harm or danger to public health or safety," as long as they are "not experiencing any symptoms[ ] and [have] not tested positive for COVID-19." Mich. Comp. Laws § 419.405(4).

In Count IX of her Complaint, Plaintiff alleges she was terminated for contracting COVID-19, staying home pursuant to public health orders, and utilizing leave time in violation of CERA. (ECF No. 1, PageID.630). As evidence, Plaintiff cites a statement by her supervisor, Long, "disparaging" another employee's medical leave. (ECF No. 1, PageID.630).

In its motion, Defendant argues Plaintiff was not fired because she tested positive for COVID-19 or had COVID-19 symptoms. (ECF No. 33, PageID.453). Rather, Plaintiff was "terminated due to three specific issues during her employment where it was perceived she was acting outside her authority and making representations regarding her role that were inaccurate." (ECF No. 33, PageID.453). Further, Plaintiff was instructed to quarantine for 14 days by Defendant.

---

[3] The CERA was repealed by Act 138 of 2022, effective July 1, 2022. This does not, however, effect Plaintiff's claim.

Here, the Court finds no genuine issue of material fact remains. Plaintiff has provided no evidence to show that she was terminated because of her COVID-19 symptoms or diagnosis. In fact, Plaintiff admitted that several other employees took the same 14-day leave due to COVID-19. (ECF No. 36-2, PageID.653–54). One disparaging comment about *another* employee's use of leave is not sufficient to show *Plaintiff* was terminated for taking leave for COVID-19. (ECF No. 36, PageID.630).

The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to Count IX.

## V.    Emergency Paid Sick Leave Act (Counts X and XI)

Finally, the Emergency Paid Sick Leave Act ("EPSLA") was enacted as part of the Families First Corona Virus Response Act ("FFCRA"). *Kovacevic v. Am. Int'l Foods*, No. 22-1675, 2023 WL 3756063, at *3 (6th Cir. June 1, 2023). The EPSLA required employers to provide up to 80 hours of paid sick leave to employees who could not work as a result of COVID-19. 29 U.S.C. § 5102(b)(2)(A). Like FMLA claims, the EPSLA prohibited employers from "discharg[ing] disciplin[ing] or in any other manner discriminat[ing] against" employees who took leave under the Act. 29 U.S.C. § 5104(a)(1); *Kovacevic*, 2023 WL 3756063, at *3. EPSLA claims may proceed under interference or retaliation theories. *Id.*

In Counts X and XI of her Complaint, Plaintiff alleges Defendant interfered with her right to reinstatement (Count X) and retaliated against her (Count XI) by terminating her employment in violation of the EPSLA. (ECF No. 1, PageID.18–20). In her Response, Plaintiff argues she was entitled to reinstatement following her leave and that Defendant interfered with that right when it terminated her employment before she could return from leave. (ECF No. 36, PageID.626).

Plaintiff also repeats her FMLA and CERA retaliation arguments from above regarding her EPSLA retaliation claims.

In regards to Plaintiff's EPSLA interference claim, Defendant argues that while Plaintiff "had the right to reinstatement" following her medical leave, "[a]n employee is not protected from employment actions . . . that would have affected the Employee regardless of whether . . . she took leave. In order to deny restoration to employment, an Employer must be able to show that an Employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 826.130. Here, as stated above, Defendant has shown that Plaintiff would have been terminated regardless of her COVID-19 leave.

Similarly, regarding Plaintiff's EPSLA retaliation claim, Defendant argues this claim fails because (1) Plaintiff cannot establish a causal connection between her COVID-19-related paid sick leave and termination, and (2) Plaintiff cannot establish pretext. As stated above, Defendant has provided ample evidence and justification for Plaintiff's termination that is unrelated to her COVID-19 diagnosis.

Absent any evidence to the contrary, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Counts X and XI.

## CONCLUSION & ORDER

For the reasons set forth above, the Court ORDERS that Defendant's Motion for Summary Judgment is **GRANTED** as to all counts.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 29, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2024, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager